**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SAMISONI TAUKITOKU,

               Petitioner,

   v.

FILSON, et al.,

               Respondents.

Case No. 3:16-cv-00762-HDM-CSD

**ORDER**

This habeas matter is before the Court on Petitioner Samisoni Taukitoku's Motion for Discovery ("Motion") (ECF No. 51).  Also before the Court is Petitioner's Motion to Extend (ECF No. 58).

**I.   Background[1]**

Taukitoku challenges a 2009 state court judgment of conviction for three counts of first-degree murder with use of a deadly weapon and four counts of assault with use of a deadly weapon. Taukitoku was sentenced to three consecutive sentences of life imprisonment without the possibility of parole and four terms of 28 to 72 months for the assault charges, running concurrent with one another but consecutive to the life sentences.

On October 28, 2007, a shooting occurred at a Halloween party in Reno, Nevada with 120-170 people, mostly university students, in attendance. Three people were killed. Several fights broke out during the party. Taukitoku brandished a firearm and threatened an

---

[1] The Court's summary is drawn from the pleadings and the Court's independent preliminary review of the record. The summary is intended only for the purpose of deciding the instant motion for discovery and is not adopted for any other purpose in this habeas proceeding, including but not limited to adjudication of the merits of the petition.

individual in the kitchen inside of the house. After the incident in the kitchen, there was another fight outside of the house involving Petitioner's co-defendant, Saili Manu. He was seen also brandishing a firearm. He pled guilty to two counts of assault with a deadly weapon. Manu was not called to testify at Taukitoku's trial, and no evidence was presented at trial that Manu had fired any shots.

Taukitoki fired several shots outside of the house. He testified that he was assaulted by several people when he was leaving the party. After being hit with an object and falling to the ground, he pulled his gun and started to shoot blindly. At trial, eyewitness testimony was presented that Taukitoku shot one or two people, including victim Charles Coogan Kelly. Three witnesses testified that Taukitoki was the only offensive shooter. Taukitoku and Manu were arrested while driving away from the party.

Another student attending the party, Andre Lawson, testified that he saw Taukitoku with a gun, walked away from the area, and heard gunshots shortly after. Lawson testified that after hearing gunshots, he then ran to his car, got his gun, and fired two shots in the air to disburse the crowd.

The State's ballistics expert, Kevin Lattyak, compared the projectiles, casings and fragments recovered from the scene to Taukitoku's, Manu's, and Lawson's firearms. Lattyak testified that with the exception of two or three projectiles or fragments, the remaining ballistics evidence either positively matched Taukitoku's gun or was consistent with his gun. Lattyak further testified that none of the bullets recovered could have come from a .32, which is the weapon Manu had, because they were too big.

Two bullets recovered from the body of Charles Coogan Kelly were positively matched to Taukitoku's gun. A projectile recovered from Derek Jensen's body bag was positively matched to Taukitoku's gun. No bullets were recovered from the body or body bag of the third victim, Nathan Viljoen.

The Court granted Taukitoku's first motion for discovery and instructed the Washoe County District Attorney's Office to provide all materials previously disclosed to defense before and during Taukitoku's trial. (ECF No. 25.) After receiving the materials provided as a result of the order granting discovery, counsel conducted its own investigation for the instant habeas case. Counsel located and obtained declarations from several eyewitnesses who claim they saw persons other than Taukitoku fire shots during the fights. (Exs. 5-10; ECF No. 33.) One individual observed Lawson fire six to seven rounds toward the house from the street. (Ex. 55; ECF No. 47-13.) Another individual saw a tall person with a thin build wearing dark colored clothes shoot six to eight rounds toward the house.[2] (Ex. 36; ECF No. 47-14.) Another witness who refused to sign a declaration with counsel but whose observation was at least partially reported to the police, also saw a man wearing a shirt similar to what Lawson wore that night shooting toward the house. (Exs. 26, 39; ECF Nos. 47-4, 47-17.) One witness avers he saw someone fitting the description of Manu shoot toward the garage during the fight and that he "knew [that person] killed DJ because [he] saw DJ collapse near the garage door." (Ex. 26; ECF No. 47-15.) Another witness also observed

---

[2] Taukitoku is a large, Tongan male with dreadlocks and attended the party wearing a white t-shirt. (*See* ECF No. 33-1.)

someone matching the description of Manu fire approximately four shots. (Ex. 40; ECF No. 47-18.)

In the instant habeas case, Taukitoku filed a third motion for discovery seeking the materials sought in the instant motion. (ECF No. 32.) The Court denied his motion without prejudice finding that Taukitoku should first pursue his unexhausted claims and their related discovery in state court in the first instance. (ECF No. 41.) The Court then granted Taukitoku's motion for stay and abeyance pending exhaustion of his unexhausted claims. (ECF No. 44.) The state court dismissed his state habeas petition finding his claims procedurally barred.[3] (Ex. 44; ECF No. 47-22.) Taukitoku appealed and the Nevada Supreme Court affirmed. (Ex. 49; ECF No. 47-26.)

## II. Discussion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ." In *Bracy*, the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed,

---

[3] Taukitoku's requests for an evidentiary hearing in state court were denied. (ECF No. 51 at 11.)

be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300 (emphasis added). This inquiry is informed by the essential elements of the claims for which petitioner seeks discovery. *Bracy,* 520 U.S. at 904. Thus, the purpose of discovery in a habeas proceeding is not to develop new claims, but, rather, to develop factual support for specific allegations contained in existing claims. *See also Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) ("Habeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'"). Moreover, additional factors may influence whether the court grants leave to conduct discovery. *See, e.g., Sherman v. McDaniel*, 333 F. Supp. 2d 960, 969 (D. Nev. 2004) (noting that the court, in exercising its discretion under Rule 6, should take into consideration whether the claims to which petitioner's proposed discovery relates are exhausted in state court).

Taukitoku argues that the witness declarations call into question Lattyak's conclusion that "virtually all of the bullets and shell casings, including those recovered from the victims' bodies, matched or were very similar to those from [Taukitoku's] firearm." (ECF No. 51 at 6-7.) Taukitoku argues that in light of the evidence that two other people fired shots during the fight,[4] the ballistics evidence must be subjected to adversarial testing.

---

[4] While, as noted, there was evidence at trial that Lawson had fired shots, the evidence was that he had shot into the air; now Taukitoku has uncovered several witnesses who observed Lawson, or someone matching his description, fire shots at the house.

To that end, Taukitoku seeks release of Lattyak's bench notes and photographs, on which he based his report, as well as the physical evidence itself, for review by an independent expert. (ECF No. 51 at 3.)

Taukitoku asserts that the discovery sought is necessary to develop Claims 1, 2, 6, and 8 of his second amended petition. (ECF No. 51 at 8-9.) He further alleges that the evidence should have been obtained through reasonable investigation by Taukitoku's trial attorney and post-conviction counsel and he was prejudiced by their failure to do so. (*Id.*) In Claim 1, Taukitoku alleges that he was denied effective assistance of counsel based on trial counsel's failure to investigate the case. (ECF No. 50.) In Claim 2, Taukitoku alleges that he was denied his right to due process and a fair trial when the trial court erroneously denied the defense a request for a continuance based on the late disclosure of critical and voluminous discovery. (*Id.*) In Claim 6, Taukitoku alleges that he was denied effective assistance of counsel when his appellate counsel failed to raise on appeal the trial court's error in denying a continuance. (*Id.*) In Claim 8, Taukitoku alleges he was denied his right to due process, a fair trial, and equal protection based on cumulative error. (*Id.*)

Taukitoku further asserts that he demonstrates good cause, that the requested materials will be exculpatory, and the requested materials are necessary to demonstrate prejudice. (ECF No. 51 at 8.) Taukitoku's trial counsel admitted that she did not retain a ballistics expert. (*Id.* at 9.)

Respondents argue that Taukitoku fails to show good cause and that his discovery requests are purely speculative. (ECF No. 55 at

4.) Respondents assert that the evidence at trial showed three individuals had firearms and that Lawson testified that he discharged his firearm. (*Id.* at 5.) All three firearms were tested, and it was concluded that the bullets that killed the victims matched that of Taukitoku's firearm. (*Id.*) Respondents argue that Taukitoku fails to establish how further investigation would lead to a different outcome. (*Id.*)

In addition, Respondents argue that Taukitoku is precluded from relief because his claims are procedurally barred. (*Id.* at 6.) They also assert that the cumulative error claim includes the ineffective assistance of counsel claim, which is noncognizable. (*Id.* at 7.) Respondents argue that a federal court's review of a claim is limited to the record presented to the state court in accordance with *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Taukitoku has established good cause under Rule 6(a) for the discovery sought. The material sought is potentially relevant at the very least to Petitioner's claims of ineffective assistance of counsel as it relates to counsel's failure to investigate the case. The discovery material would help establish whether Taukitoku was prejudiced by his counsel's alleged failure to investigate. The material is also potentially relevant to Taukitoku's argument that he may overcome procedural default because his state post-conviction counsel was also ineffective under *Martinez v. Ryan*, 566 U.S. 1 (2012).

Respondents argue that Taukitoku's claims are precluded from review because they are procedurally defaulted, and that the federal court's review of a claim is limited to the record presented to the state court. The holding in *Pinholster*, however,

precludes consideration of evidence received for the first time in federal court only when the court is actually conducting review of a state court decision on the merits under § 2254(d). *Pinholster* does not preclude consideration of such evidence when presented by the petitioner in an effort to overcome a procedural bar in federal court. First, presentation of evidence for that purpose does not constitute presentation of evidence on the merits of a claim adjudicated on the merits in the state courts. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (en banc) (presentation of evidence to overcome a procedural default by establishing cause based on inadequate assistance of post-conviction counsel did not constitute presentation of evidence on the merits of a claim). Second, where a claim has been procedurally defaulted or otherwise is unexhausted in the state courts, the claim has not been adjudicated on the merits in a state-court proceeding in any event. *See, e.g., id.* (procedurally defaulted claim had not been adjudicated on the merits); *see also Gentry v. Sinclair*, 705 F.3d 884, 896 (9th Cir. 2013) (similar). When and if this Court reaches a merits review in this action, the Court will address to what extent *Pinholster* limits the evidence this Court considers pursuant to its review under 28 U.S.C. § 2254(d). In short, the Court will not necessarily decide every potential procedural and merits issue in the case before it permits discovery of facts that may more fully inform its consideration of at least some of those issues later in the case.

Respondents further argue that Taukitoku's discovery requests for physical materials for testing will jeopardize chain of custody and would be "catastrophic" in the event the prosecution has to

retry Taukitoku in state court in the future. (ECF No. 55 at 8.) Taukitoku asserts that chain of custody can be maintained as he has retained the services of an expert and a lab that maintains a quality assurance program that includes chain of custody protocol. (ECF No. 59 at 10.)

The Court orders that the attorneys for the Petitioner and Respondents shall meet and confer and prepare for the Court a proposed order permitting discovery that will assure that a proper chain of custody will be maintained, and that the integrity of the evidence will be maintained and that sufficient safeguards shall be in place to eliminate any possibility of tampering with or alteration or destruction of the evidence. The parties shall submit the order to the Court on or before May 1, 2022. Should the parties fail to reach an agreement, the Court will set a hearing to resolve any remaining issues or conflict. The Court will not require review of a proposed order and/or subpoena as to release of the copies of Lattyak's bench notes and photographs used in conducting his examination and preparing his ballistics report.

**III. Motion to Extend**

Taukitoku requests an extension of time to file his reply in support of discovery. Good cause appearing, the Court grants Taukitoku's motion to extend.

**IT IS THEREFORE ORDERED:**

1. Petitioner Samisoni Taukitoku's Motion to Extend (ECF No. 58) is GRANTED.

2. Petitioner Samisoni Taukitoku's Motion for Discovery (ECF No. 51) is GRANTED.

3. Attorneys for Petitioner and Respondents shall meet and

confer and prepare for the Court a proposed order permitting discovery that will assure that a proper chain of custody will be maintained, and that the integrity of the evidence will be maintained and that sufficient safeguards shall be in place to eliminate any possibility of tampering with or alteration or destruction of the evidence. Petitioner shall have until May 16, 2022, to file a joint proposed Court order and/or status report informing the Court that the parties could not reach an agreement.

4. The Court's grant of discovery as to the release of 2 firearms, 10 projectiles, 16 casings, and 1 fragment, for examination in this order is subject to the Court's approval of the parties' proposed order and/or subpoena(s) relative to such discovery.

DATED: this 30th day of March, 2022.


HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE