# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SAMISOMI TAUKITOKU,

                          Petitioner,

v.

FILSON[1], *et al.*,

                         Respondents.

Case No. 3:16-cv-00762-HDM-CSD

**ORDER DENYING SECOND
AMENDED PETITION FOR
WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254**

       Petitioner Samisomi Taukitoku, a Nevada prisoner, is convicted of three counts of first-degree murder with use of a deadly weapon and four counts of assault with use of a deadly weapon. Taukitoku filed a second amended petition for writ of habeas corpus under 18 U.S.C. § 2254. ECF No. 50. For the reasons discussed below, the Court denies the second amended petition, denies Taukitoku a certificate of appealability, and directs the clerk to enter judgment accordingly.

## I.    Background

### a.  Conviction and Appeal

       Taukitoku challenges a 2009 state court judgment of conviction, pursuant to a jury trial, for three counts of first-degree murder with use of a deadly weapon and four counts of assault with use of a deadly weapon. ECF No. 74-8. The state court sentenced him to three consecutive sentences of life imprisonment without the possibility of parole plus a consecutive term of 96 to 240 months for the use of a deadly weapon enhancement. *Id.* In addition, the state court sentenced

---

[1] According to the state corrections department's inmate locator page, Petitioner is incarcerated at Northen Nevada Correctional Center ("NNCC") *See https://ofdsearch.doc.nv.gov/form.php.* The department's website reflects that John Henley is the warden of that facility. *See https://doc.nv.gov/Facilities/NNCC_Facility/.* At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, John Henley, as Respondent for the prior Respondent Filson pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

him to four terms of 28 to 72 months for the assault charges, running concurrent with one another but consecutive to the life sentences. *Id*. Taukitoku filed a direct appeal, and the Nevada Supreme Court affirmed his conviction. ECF No. 75-5.

### b. Facts Underlying Conviction

On October 28, 2007, a shooting occurred at a Halloween party in Reno, Nevada with 120-170 people, mostly university students, in attendance. Taukitoku attended the party with some friends. Several fights broke out during the party. At one point, Taukitoku brandished a firearm shooting it out of a window. He put the gun away as he left the party. Taukitoki testified that he was assaulted by several people when he was leaving the party. After being hit with a shovel and falling to the ground, he pulled out his gun in a panic and started to shoot. Three people were killed.

### c. State Post-Conviction Proceedings and Federal Habeas Action

Taukitoku filed a state petition for writ of habeas corpus seeking post-conviction relief. ECF No. 75-21. Following appointment of counsel, he filed a supplemental state habeas petition. ECF No. 76-1. Following an evidentiary hearing, the state petition was denied. ECF No. 77-2. On appeal, the Nevada Supreme Court affirmed the denial of relief. ECF No. 77-24.

Taukitoku initiated the instant federal habeas matter in December 2016. ECF No. 4. Following appointment of counsel, he filed his first amended petition. ECF No. 19. The Court granted his motion for stay and abeyance to exhaust his unexhausted claims in state court. ECF No. 44. In May 2019, Taukitoku returned to state court and filed a second state habeas petition. ECF No. 78-1. The state court dismissed Taukitoku's second state habeas petition as procedurally barred finding Taukitoku failed to demonstrate good cause and actual prejudice. ECF No. 47-22. The Nevada Supreme Court affirmed the district court's ruling finding Taukitoku failed to establish actual innocence. ECF no. 47-27.

Upon completion of Taukitoku's state court proceedings, the Court granted Taukitoku's motion to reopen. ECF No. 49. Taukitoku filed his second amended petition. ECF No. 50. The Court denied Respondents' motion to dismiss. ECF Nos. 85, 100.

**II.      Governing Standards of Review**

**a.   Review under the Antiterrorism and Effective Death Penalty Act**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### b.   Standard for Evaluating Ineffective Assistance of Counsel ("IAC") Claims

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of IAC claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an IAC claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the IAC claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### c. Standard for Evaluating Procedurally Defaulted Claims

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). Where a petitioner fails to do so and therefore "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

For claims of ineffective assistance of trial counsel, petitioners may overcome cause for procedural default of the claim where (1) the claim of ineffective assistance of trial counsel is a "substantial" claim; (2) the "cause" consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective assistance of trial counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."[2] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 14, 18 (2012); citing *Coleman*, 501 U.S. 722). An ineffective assistance of trial counsel claim "is insubstantial" if it lacks merit or is "wholly without factual support." *Martinez*, 566 U.S. at 14-16 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

"[T]he standard for evaluating the underlying trial counsel IAC claim during the *Martinez* prejudice analysis is not as stringent as that required when considering the merits of the underlying [*Strickland*] claim." *Leeds v. Russell*, 75 F.4th 1009, 1017-18 (9th Cir. 2023) (citing *Michaels v. Davis*, 51 F.4th 904, 930 (9th Cir. 2022) ("[A] conclusion on the merits of [a trial

---

[2] Nevada prisoners are required to raise IAC claims involving trial counsel in an initial state-postconviction petition, which is the initial collateral review proceeding for purposes of applying *Martinez. See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

counsel IAC] claim under *Strickland* holds a petitioner to a higher burden than required in the *Martinez* procedural default context, which only requires a showing that the [trial counsel IAC] claim is 'substantial.'")). While review of trial counsel's actions in a *Martinez* prejudice analysis is conducted under a more relaxed standard, the *Strickland* standard is applied with full force when considering the actions of initial postconviction review counsel for a *Martinez* cause analysis. *Leeds*, 75 F.4th at 1022. The requirements of cause and prejudice are distinct but, "[t]he analysis of whether both cause and prejudice are established under *Martinez* will necessarily overlap," as "each considers the strength and validity of the underlying ineffective assistance claim.'" *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). On all such issues, the Court's review is de novo. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1246-48 (9th Cir. 2013); *Atwood v. Ryan*, 870 F.3d 1033, 1060 n.22 (9th Cir. 2017).

## III.   Discussion

### a.   Ground 1—Ineffective Assistance re: Failure to Investigate

In Ground 1, Taukitoku alleges that trial counsel rendered ineffective assistance for failure to investigate whether there was another shooter and/or gun. ECF No. 50 at 16-19. He alleges that trial counsel did not hire an investigator or request funding to hire an investigator. *Id*. at 16-17. In addition, trial counsel did not hire a ballistics expert to review the evidence. *Id*. at 17. Taukitoku alleges that had trial counsel conducted an investigation, she would have uncovered exculpatory evidence, including witnesses identifying other individuals as active shooters. *Id*. at 17-18.

Respondents assert that Ground 1 should be dismissed because it is procedurally defaulted and Taukitoku cannot overcome the default under *Martinez* because the underlying claim is meritless. In addition, Respondents assert that the Court cannot consider the witness declarations that Taukitoku relies on in support of Ground 1 because they were not submitted to the state court "in accordance with state procedures." *See Shinn v. Ramirez*, 596 U.S. 366 (2022).

///

///

1

2

### i. Additional Background Information

#### 1. Evidence at Trial

Taukitoku testified at trial that after he arrived at the party, he attempted to stop a fight between his friend and another individual. ECF No. 40-6 at 49-50. The fight grew larger with other individuals joining. *Id*. at 51. Taukitoku informed a friend in the dining room that he was leaving. *Id*. at 52. As he was walking, a beer bottle hit Taukitoku on the arm. *Id*. at 53. Taukitoku walked into the kitchen to confront the group of individuals that threw the bottle at him. *Id*.

While in the kitchen, Taukitoku pulled out his gun, the group of individuals retreated backwards, and one man stumbled to the ground. *Id*. at 53-54. He pointed his gun at the man on the ground and kicked him two or three times in his back or butt. *Id*. at 54. Taukitoku exited the kitchen towards the front door holding his gun. *Id*. at 55. While in the breezeway, he shot his gun out of the window downwards towards the ground out of frustration. *Id*.

Taukitoku walked outside and put his gun away. *Id*. While outside, Taukitoku was hit with an object on his back causing him to stumble. *Id*. Several people rushed and attacked him from behind. *Id*. at 56. After being hit in the face, Taukitoku fell to his knees and continued to be hit. *Id*. at 57. Taukitoku testified that he was scared, jumped up, pulled out his gun and began shooting towards the direction of the driveway. *Id*.  He stopped shooting and ran to his car. *Id*. at 59. While running to his car, he shot his gun again because he thought people were chasing him. *Id*.

Taukitoku's co-defendant, Saili Manu ("Manu"), also brandished a gun at the party, but none of the witnesses testified that he discharged it. Manu did not testify at Taukitoku's trial. While driving away from the party, Taukitoku and Manu were arrested, and both of their guns were seized by the police.

Andre Lawson ("Lawson") testified at trial that he saw Taukitoku holding a gun, waving it around, and pointing it at people in front of the house. ECF No. 40-4 at 63-65. Lawson left and while walking towards his car, he heard gunshots. *Id*. at 66. He then ran to his car, retrieved his gun from the car, and fired two shots into the air to disburse the crowd. *Id*. at 66-69. Lawson then

heard two more shots. *Id.* at 69. Lawson turned his gun over to the police for examination.

Annetria Scott ("Scott") testified at trial that she was in the driveway when she heard a gunshot. ECF No. 40-3 at 224-227. She further testified that she observed Taukitoku waving his gun and saw Taukitoku shoot a man that was standing next to her. *Id.* at 228. Scott saw another male individual holding a gun but did not see him shoot the gun. *Id.*

Stephanie Figueroa ("Figueroa") testified at trial that she ran to hide behind a garbage can next to the driveway. ECF No. 40-3 at 251-256. Figueroa testified that she saw a man holding a gun and recognized Taukitoku's photograph in the newspaper as the man she saw holding the gun at the party. *Id.* at 257-58.

Uto Lomano ("Lomano") testified at trial that he went to the party, that Taukitoku drove him to the party, and that he would sometimes refer to Taukitoku as his uncle. ECF No. 40-4 at 106-108. Lomano testified that he observed Taukitoku shoot one or two white men. *Id.* at 113. He further testified that he saw Manu with a black gun but did not see Manu shoot anyone. *Id.* at 115.

Edward Kevin Lattyak ("Lattyak"), the State's ballistics expert, testified at trial. ECF No. 40-5 at 32. He compared the projectiles, casings and fragments recovered from the scene to Taukitoku's, Manu's, and Lawson's firearms. *Id.* at 38. Lattyak testified that with the exception of two or three projectiles or fragments, the remaining ballistics evidence either positively matched Taukitoku's gun or was consistent with his gun. Lattyak further testified that none of the bullets recovered could have come from the .32, which is the weapon Manu had, because they were too big. *Id.* at 45. In addition, Manu's firearm was fully loaded with a cartridge jammed in the ejection port. *Id.* at 59-61.

Two bullets recovered from the body of Charles Coogan Kelly were positively matched to Taukitoku's gun. *Id.* at 57. A projectile recovered from Derek Jensen's body bag was positively matched to Taukitoku's gun. *Id.* at 56. No bullets were recovered from the body or body bag of the third victim, Nathan Viljoen.

Victor Ruvalcava, a forensic investigator, testified that "the bulk" of the shell casings in

and around the front driveway were from Taukitoku's type of firearm. ECF No. 40-4 at 190. Marci Margritier, a forensic investigator, testified as to the process of collecting and diagramming collected shell casings from the scene. *Id*. at 196-200.

### 2. Post-Conviction Evidentiary Hearing Testimony

At the post-conviction evidentiary hearing, Taukitoku's trial counsel, Taovaonga Laura Lui ("Lui"), testified that she prepared for trial based on a presentation of a theory of self-defense. ECF No. 77-1 at 8, 15.  Lui testified as follows:

> Basically, after speaking with [Taukitoku], and the witnesses, examining the forensics, he is basically jumped in front of the house is seeking to protect himself. Because he's – at that point, he's basically beaten with a shovel and there's bruises all over him. But he's beaten and the theory is, when its one against a group of males, who have a shovel and other possible weapons, that they're beating him to death.

*Id*. at 15. She further testified that she explored the possibility that there was another gun involved and another shooter. *Id*. at 15-16. She did not hire a ballistics expert because of a lack of funds but met with ballistics experts and with the investigators regarding the ballistic reports. *Id*. at 17. Lui spoke to witnesses that attended the party. *Id*. at 29.

### ii. The Court may not consider evidence beyond the state court record in determining whether Taukitoku satisfies *Martinez*.

Before determining whether Taukitoku can overcome the procedural default of this claim under *Martinez*, the Court must determine whether it may consider witness declarations (ECF Nos. 47-13, 47-14, 47-15, 47-16, 47-17, 47-18) submitted in support of Ground 1.[3] The Supreme Court decided in *Shinn v. Ramirez*, 596 U.S. 366 (2022), that "a federal court may not conduct an evidentiary hearing *or otherwise consider evidence beyond the state court record* based on ineffective assistance of postconviction counsel" unless the exceptions set forth in 28 U.S.C. §

---

[3] In his reply, Taukitoku argues that he may also overcome "any and all remaining procedural bars" based on new evidence of actual innocence. ECF No. 112 at 15-16. The Court will nonetheless determine whether Taukitoku may overcome the default of Ground 1 under *Martinez*.

2254 are satisfied. The requirements of § 2254 are as follows:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

> > (A) the claim relies on-

> > > (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> > > (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A); *see also Shinn*, 596 U.S. at 283 (affirming the prerequisites in § 2254(e)(2) apply only "when a prisoner 'has failed to develop the factual basis of claim.'") The Supreme Court has held that although § 2254(e)(2) refers only to evidentiary hearings, its provisions apply to a federal habeas court's consideration of evidence. *See McLaughlin v. Oliver*, 95 F.4th 1239, 1248-49 (9th Cir. 2024) (acknowledging *Shinn* "reaffirmed that [§ 2254(e)(2)]'s restrictions not only apply to evidentiary hearings, but also apply "when a prisoner seeks relief based on new evidence *without* an evidentiary hearing") (citing, 596 U.S. at 389).

Because Taukitoku failed to develop a factual basis to support his claim in accordance with state procedural rules, he must meet the requirements of § 2254(e)(2) before the Court may, in considering *Martinez* or the merits, grant an evidentiary hearing or consider the witness declarations. *See Shinn*, 596 U.S. at 382, 385, 389. Taukitoku does not allege that he can meet the requirements of § 2254(e)(2). The Court concludes that it may not consider the witness declarations submitted in support of Ground 1, in considering *Martinez* or the merits. Taukitoku, however, also argues that the new evidence of actual innocence overcomes the procedural default of Ground 1, which the Court discusses below.

///

///

1

### iii.  Taukitoku fails to excuse the procedural default of Ground 1 under *Martinez*.

2

The Court finds that Ground 1 is not substantial within the meaning of *Martinez*. 566

3

U.S. at 14. Taukitoku fails to demonstrate that his underlying ineffective assistance of counsel

4

claim is substantial because he fails to demonstrate that prejudice resulted under *Strickland*.

5

Defense counsel has a "duty to make reasonable investigations or to make a reasonable

6

decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

7

Furthermore, "strategic choices made after thorough investigation of law and facts relevant to

8

plausible options are virtually unchallengeable." *Id.* at 690. "[I]neffective assistance claims based

9

on a duty to investigate must be considered in light of the strength of the government's case."

10

*Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *opinion amended on denial of reh'g*, 253 F.3d

11

1150 (9th Cir. 2001). In general, claims of failure to investigate must show what information

12

would be obtained with investigation, and whether, assuming the evidence is admissible, it

13

would have produced a different result. *Hamilton v. Vasquez*, 17 F.3d 1149, 1157 (9th Cir.

14

1994); *Wade v. Calderon*, 29 F.3d 1312, 1316-17 (9th Cir. 1994), *overruled on other grounds* by

15

*Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 815 (9th Cir. 2003).

16

Taukitoku fails to demonstrate that Ground 1 is a substantial claim within the meaning of

17

*Martinez* because even if Taukitoku had shown deficient performance, he fails to demonstrate a

18

reasonable probability of a different result. When considered in light of all of the evidence,

19

including Taukitoku's testimony, trial counsel's failure to investigate whether there was another

20

shooter that was shooting towards the incident did not prejudice Taukitoku. The jury heard

21

Taukitoku's testimony and defense that he was struck from behind, panicked, and began

22

shooting. Lawson testified that he shot into the air to disburse the crowd. In addition, the jury

23

also heard Scott testify that she observed Taukitoku shoot an individual near her and Lomano

24

testify that he observed Taukitoku shoot one or two individuals.

25

In addition, the jury heard testimony that with the exception of two or three projectiles or

26

fragments, the remaining ballistics evidence either positively matched Taukitoku's gun or was

27

consistent with his gun. Two bullets recovered from the body of Charles Coogan Kelly were

28

positively matched to Taukitoku's gun and a projectile recovered from Derek Jensen's body bag was positively matched to Taukitoku's gun. He cannot show a reasonable probability that the result of the proceeding would have been different.

Because there was no prejudice, the Court need not analyze deficiency. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one."). Accordingly, Taukitoku does not demonstrate cause and prejudice relative to the procedural default under *Martinez*.

### iv. Taukitoku has not established actual innocence.

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare. *McQuiggin,* 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998)

(quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. 2003). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006). Indeed, cases where the actual innocence gateway standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013). Such evidence may include new DNA evidence, or "a detailed third-party confession," that "undermine[s] the validity of the prosecution's entire case." *Sistrunk v. Armenakis*, 292 F.3d 669, 677 (9th Cir. 2002); *see House*, 547 U.S. at 540-41. The actual innocence exception is not satisfied by evidence that is merely speculative, collateral, cumulative, or "insufficient to overcome otherwise convincing proof of guilt." *Larsen*, 742 F.3d at 1096.

### 1. Evidence Discovered During Federal Habeas Proceedings

The Court granted Taukitoku's first motion for discovery and instructed the Washoe County District Attorney's Office to provide all materials previously disclosed to defense before and during Taukitoku's trial. ECF No. 25. After receiving the materials provided as a result of the order granting discovery, counsel conducted its own investigation for the instant habeas case. Counsel located and obtained declarations from several eyewitnesses who claim they saw persons other than Taukitoku fire shots during the fights.

Coty Feest ("Feest"), attended the party and heard gunshots. ECF No. 47-13 at 3. He signed a declaration stating that he observed a black male that was 5'9" to 5'10," weighing 160 to 170 pounds, wearing a black t-shirt standing in the middle of the street. *Id.* The black male was shooting at chest level, pointing his gun at the house, and shooting indiscriminately. *Id*. He shot six to seven rounds. *Id*.

Regal Minyard ("Minyard") signed a declaration identifying a tall individual with a thin build wearing dark clothing shooting a gun in the middle of the street. ECF No. 47-14 at 3. The shooter was facing forward with his arm stretched out in front of him at chest level. *Id.* Minyard provided that it appeared that the shooter emptied his clip, shooting six to eight rounds. *Id.*

Another witness, Jonathan Amaya, who refused to sign a declaration with counsel but whose observation was at least partially reported to the police, also saw a man wearing a shirt similar to what Lawson wore that night shooting toward the house. ECF Nos. 47-4, 47-17.

Kody Fitch ("Fitch") avers he saw someone fitting the description of Manu, a large man with curly hair wearing a blue football jersey, shoot toward the garage during the fight and that he "knew [that person] killed DJ because [he] saw DJ collapse near the garage door." ECF No. 47-15 at 3. Another witness, Kamron Darby, signed a declaration that he observed someone matching the description of Manu, a Tongan male wearing a football jersey with curly hair, fire approximately four shots. ECF No. 47-18. Taliauli Kofuta signed a declaration that he heard gunshots coming from the street and ran to his car. ECF No. 47-16. He saw Taukitoku driving away as more gunshots rang out. *Id.*

### 2. Analysis

Taukitoku cannot meet *Schlup*'s exacting standard. Even if all of the evidence upon which he now relies had been introduced at trial, the jurors could still have believed Lawson's testimony that he had fired shots into the air to disburse the crowd. In addition, Taukitoku does not present any forensic or ballistics evidence that contradicts the State's expert testimony that Manu's firearm was fully loaded with a cartridge jammed in the ejection port.

There was substantial evidence of Taukitoku's guilt, including testimony from multiple witnesses that observed Taukitoku shooting individuals, Taukitoku's own testimony that he began shooting after he was attacked from behind, and ballistics evidence comparing the projectiles, casings and fragments recovered from the scene to Taukitoku's, Manu's, and Lawson's firearms and showing that except for two or three projectiles or fragments, the remaining ballistics evidence either positively matched Taukitoku's gun or was consistent with

his gun.

The new evidence, taken collectively, is not sufficient to show a likelihood that no reasonable juror would have convicted Taukitoku even after considering such evidence. The Court finds that Taukitoku has not established a convincing showing of actual innocence to overcome the procedural default of his claims. Accordingly, the Court denies habeas relief on Ground 1.

**b. Ground 2—Denial of Right to Due Process and Fair Trial re: Denial of Request for Trial Continuance**

In Ground 2, Taukitoku alleges that the state court erred by denying trial counsel's request for a trial continuance based on the State's late disclosure of evidence. ECF No. 50 at 19-21. When the State disclosed a large amount of discovery ten days before trial, Taukitoku's trial counsel moved for a continuance. *Id*. at 19. At the hearing, trial counsel advised the state court that she received 47 to 48 CDs of discovery and that some of, but not all, the recorded interviews were transcribed. *Id*. In addition, trial counsel advised the state court that the newly disclosed evidence included an undisclosed witness, who potentially would be a rebuttal witness possessing prior bad act evidence. *Id*. at 20. He argues that the state court's denial of the continuance prevented trial counsel from conducting a thorough investigation and incorporating the newly disclosed evidence into the theory of defense. *Id*. at 20.

Respondents argue that Ground 2 should be dismissed as procedurally barred and that Taukitoku cannot overcome the procedural bar based on new evidence of actual innocence.[4] ECF No. 104 at 12.

**i. Additional Background Information**

The state court set trial to begin on November 3, 2008. ECF No. 71-5. The state court conducted a status hearing on October 24, 2008, to confirm trial readiness. Trial counsel filed a

---

[4] The Court deferred ruling on whether Taukitoku could overcome the procedural default of Ground 2 with a showing of actual innocence in its order addressing Respondents' motion to dismiss finding that it was an issue that would be better addressed in conjunction with the merits of all of Taukitoku's claims. ECF No. 100 at 10.

motion to continue trial on October 24, 2008, and argued such motion before the state court. ECF No. 72-8. On October 23rd, trial counsel received 47 to 48 CDs of discovery, containing witness statements and some photographs. She argued that although she received transcripts of the statements, she had not had an opportunity to compare the audio recordings to the transcripts. In addition, trial counsel argued that she received a report of another witness, Daniel Peltier ("Peltier"). *Id.* at 4-7.

The State, however, provided that it did not intend to call Peltier in its case in chief as he was a rebuttal witness. In addition, the State presented that the transcripts of the interviews and detailed reports of the statements have been in trial counsel's possession for six months. *Id.* at 7-8. The State further objected to the continuance based on the large number of witnesses, including out-of-state witnesses, that were under subpoena and arranged to attend trial in November. *Id.* at 10. The state court noted that trial counsel did not indicate any issues with discovery at the status conference in June. *Id.* at 15-16. During the June status conference, the state court also informed the parties that it intended to keep the case on track for the November trial date. *Id.* at 16.

### ii. Legal Standard

"The matter of continuances is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (stating, "broad discretion must be granted to trial courts on matters of continuances"). For that reason, "[t]here are no mechanical tests for deciding when a denial of continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589.

In assessing whether the denial of a continuance is arbitrary or unreasonable, the court considers (1) a petitioner's "diligence in his efforts to ready his defense prior to the date set for hearing," (2) the likelihood "that the need for a continuance could have been met if the

continuance had been granted," (3) "the extent to which granting the continuance would have inconvenienced the court and the opposing party," and (4) the extent to which the petitioner might have suffered harm as a result of the denial. *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985).[5]

### iii.   Conclusion

As discussed above, the Court finds that Taukitoku has not established a convincing showing of actual innocence and Ground 2 is dismissed as procedurally barred.

Even if Ground 2 were not procedurally barred, the Court would nonetheless deny relief in the alternative on *de novo* review. The state court's denial of the motion for continuance was not arbitrary and did not violate due process. Trial counsel requested a continuance partly based on a need to compare audio recordings with already disclosed transcripts. Although certain witnesses provided recorded interviews that appear to have been disclosed in the State's late disclosures, such recorded interviews were disclosed in transcripts that were already in trial counsel's possession. Trial counsel's request was also based on the disclosure of a witness. The State, however, clarified that it did not intend to call such witness in its case in chief. The state court did not abuse its broad discretion in denying the motion for continuance based on the information presented at the time of the request. Accordingly, the Court denies habeas relief on Ground 2.

### c.   Ground 3—Ineffective Assistance re: Failure to Object to Improper Juror Comments

In Ground 3, Taukitoku alleges that trial counsel rendered ineffective assistance for failure to object to a potential juror's comments expressing concern about Taukitoku's possession of a gun. ECF No. 50 at 22-24. Although the potential juror who made comments about the possession of guns was challenged and struck for cause, another juror referenced her comments. *Id*. at 22-23. Taukitoku argues that the juror's statements had a substantial and

---

[5] *Flynt*, however, is a direct appeal in a criminal case originating in federal district court. *Flynt*, 756 F.2d at 1354. It is not a habeas case subject to deferential review required under § 2254.

injurious effect on the verdict and affected the presiding judge at sentencing. *Id*. at 23.

### i. Additional Background Information

During jury selection, the potential juror made the following comments:

- The thing that's bothering me is why is it necessary and is it legal for these young children to carry firearms.

- From what the judge said, I would have to know why he had the handgun. I don't know if that's a question I could ask or not. I don't see any necessity for a young person to have a handgun.

- If this young man were old enough to carry a firearm, if he had gone through the classes, if there was necessity for him to carry one, I hope I'm answering this correctly, then I think there is a reason to have one. But I don't know what the reason was. I mean, what his motivation for carrying a handgun was.

ECF No. 73-1 at 69-70.

After the potential juror was dismissed, another juror made the following comments:

> The only problem I have is the way you stated in terms of lethal force, I think what the woman that was just excused was saying, talking about the idea of carrying a handgun around or some other type of device that could do something like that. Is why is a person doing that?

> Yet I still have that lingering feeling of is three people have been killed, which is allegedly what's said here, somebody had to bring a gun, somebody had to do it. And the idea of just wandering around at parties just like this woman said, why are we doing that? I don't find that correct or proper.

ECF No. 73-1 at 102-104.

At the post-conviction evidentiary hearing, trial counsel testified that after further questioning that the potential juror answered that she could be fair and impartial. ECF No. 77-1 at 35. Based on the potential juror's answers, trial counsel did not believe she had grounds for cause. *Id*. She testified that "…based on my questioning or further questions of the juror and her responses, that I did not feel that her original comment would have infected or prejudiced the rest of the prospective jurors to the extent that they were not able to give my client a fair or be fair or impartial." *Id*. at 36.

### ii. State Court Determination

The Nevada Supreme Court held:

Taukitoku contends that the district court erred by denying his claim that trial counsel was ineffective for failing to strike the venire when potential jurors made comments about youths carrying guns. Taukitoku fails to demonstrate that trial counsel was ineffective. Taukitoku does not identify a basis upon which trial counsel could have successfully moved to strike the venire. Moreover, at the evidentiary hearing in this case, trial counsel testified that she made a strategic decision not to take action regarding the comments because she believed that the jury would be fair. *See Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-21 (1996) (observing that trial counsel's strategic decisions are "virtually unchallengeable" (internal quotation marks omitted). Accordingly, we conclude that the district court did not err by denying this claim.

ECF No. 77-24 at 4.

### iii.  Conclusion

The Nevada Supreme Court's decision is not contrary to, nor an unreasonable application of federal law as determined by the United States Supreme Court and is not based on unreasonable determinations of fact in the state court record.

Taukitoku has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.  As stated by the Nevada Supreme Court, an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 691. *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.") The decision whether to object to a potential juror's comments is a tactical decision within the purview of counsel's discretion. The Court therefore finds that the state appellate court reasonably determined that Taukitu failed to show that his trial counsel was deficient.

In order to prevail on the ineffective assistance claim, Taukitoku must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, the Court need not "address both components of the inquiry" if the petitioner "makes an insufficient showing on one." *Id*. at 697. The Court finds that Tauktioku has not demonstrated that the state appellate court's determination on deficiency was unreasonable. Therefore, the *Strickland*

inquiry need not continue, and Taukitoku is denied federal habeas relief for Ground 3.

### d. Ground 4—Ineffective Assistance re: Failure to Object to Prosecutor's Characterization of Taukitoku

In Ground 4, Taukitoku alleges that trial counsel rendered ineffective assistance for failure to object the prosecutor referring to Taukitoku as an "alpha male" four times during closing and rebuttal arguments. ECF No. 50 at 25-26. Taukitoku argues that such characterization was so notable that the state court commented as sentencing that "this is not a time to call names. This is not a time to call somebody a top dog, alpha male, a thug, a gangster." *Id*. at 25. He further argues that such characterization is insulting and improper as it alludes to Taukitoku being an animal. *Id*. at 25-26.

### i. State Court Determination

Although the claim raised in Ground 4 was presented to both the state district court and the state appellate court, both courts only address the ineffective assistance of appellate counsel claim as it relates to the failure to object to the prosecutor's characterization of Taukitoku as an "alpha male." In determining whether the district court erred by denying Taukitoku's claim of ineffective assistance of appellate counsel, the Nevada Supreme Court held:

> Taukitoku contends that the district court erred by denying him claim that appellate counsel was ineffective for failing to challenge the prosecutor's description of him as a "thug" and "alpha male." Taukitoku fails to demonstrate that counsel was ineffective. Taukitoku's citations to the record do not indicate that the prosecutor called him a "thug." Although the prosecutor used the term "alpha male," the term was not inappropriate in context. Moreover, Taukitoku did not object at trial and appellate counsel testified that he made a strategic decision to focus on a stronger argument because he did not believe the claim would be successful given the nature of the comments and trial counsel's failure to object to them.

ECF No. 77-24 at 5-6.

The state district court held:

> [Taukitoku] argues that appellate counsel should have raised the State's repeated references to him as a "thug" and "alpha male" during trial, saying that the terms were highly prejudicial and that they were derived from incendiary pretrial media coverage. There is a line between "inflammatory" comments which are likely to unfairly affect the jury, and characterizations that merely fit the State's theory of the case. *Valdez v. State*, 124 Nev. 1172, 1191 (2008) ("A prosecutor may not blatantly attempt to inflame a jury"). While the trial court did note with some

1
2
3
4
5

disapproval the frequent use of these terms during the State's case, there is no indication that the terms were used with an intent to inflame the jury. Rather, they were used in the context of the State's case in painting the defendant as a belligerent tough-guy who carried a gun in order to intimidate others. This is not in itself a violation. Moreover, it is unlikely that the jury's decision to convict on all counts can be attributed to the Prosecutor's statements, particularly in light of all the other evidence in the case. *See id*. (applying plain error review to improper statements). As [Taukitoku] failed to show that this issue had a likelihood of success on appeal, his claim must fail.

6

ECF No. 77-2 at 6-7.

7

### ii. Standard of Review

8

The subject of federal review is "the last reasoned state-court decision." *Murray v.*

9

*Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). Generally, federal courts "look through" unexplained

10

decisions and review "the last related state-court decision that does provide relevant rationale,"

11

employing a rebuttable presumption "that the unexplained decision adopted the same reasoning."

12

*Wilson v. Sellers*, 584 U.S. 122, 126 (2018). The presumption may be rebutted "by showing that

13

the unexplained affirmance relied or most likely did rely on different grounds than the lower

14

state court's decision, such as alternative grounds for affirmance that were briefed or argued to

15

the state supreme court or obvious in the record it reviewed." *Id*.

16

"When a federal claim has been presented to a state court[,] the state court has denied

17

relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that

18

the state court adjudicated the claim on the merits in the absence of any indication or state-law

19

procedural principles to the contrary." *Richter*, 526 U.S. at 99. Where the state court reaches a

20

decision on the merits and there is no reasoned lower-court opinion, a federal court

21

independently reviews the record to determine whether habeas corpus relief is available under §

22

2254(d). *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record

23

is not *de novo* review of the constitutional issue, but rather, the only method by which we can

24

determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*,

25

336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and

26

"must determine what arguments or theories … could have supported, the state court's decision;

27
28

21

and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102.

### iii.   Conclusion

Taukitoku has not established that trial counsel was ineffective because he has not established that trial counsel was deficient for failing to object to the prosecutor's comments or resulting prejudice. In analyzing whether a prosecutor engaged in misconduct, a court must determine whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). As provided by the state district court and the state appellate court in their decision on the ineffective assistance of appellate counsel claim, while the trial court noted disapproval of the comments, the prosecutor's comments were not inappropriate in the context of closing argument and its theory of the case.

Given the strength of the evidence against Taukitoku, including Taukitoku's testimony and the physical evidence, even if trial counsel had objected to the prosecutor referring to Taukitoku as an "alpha male," there is no reasonable probability that the outcome of the proceedings would have been different. *See Darden,* 477 U.S. at 181–82 (analyzing a claim that the prosecutor's argument violated due process by considering the strength of the evidence against the defendant). *See also Hein v. Sullivan*, 601 F.3d 897, 916 (9th Cir. 2010) (analyzing "the potential prejudice" of the prosecutor's comments to determine whether the comments rendered the trial fundamentally unfair under *Darden*). The state appellate court's denial of Ground 4 was objectively reasonable. Taukitoku is denied federal habeas relief for Ground 4.

### e.   Ground 5—Ineffective Assistance re: Failure to Appeal Trial Court's Denial of Change of Venue Request

In Ground 5, Taukitoku alleges that appellate counsel rendered ineffective assistance for failure to argue on appeal that the trial court erred in denying Taukitoku's request for a change of venue. ECF No. 50 at 17-19. Trial counsel moved for a change of venue, arguing that the trial

1  court could not seat an impartial jury based on the excessive and negative pre-trial publicity. *Id*.

2  at 18. Taukitoku argues that the media coverage of the shooting and trial angered the public and

3  predisposed Taukitoku as being found guilty before trial even started. *Id*.

### i. State Court Determination

The Nevada Supreme Court held:

> Taukitoku contends that the district court erred by denying his claim that appellate counsel was ineffective for failing to challenge the district court's denial of his motion to change venue. Taukitoku fails to demonstrate that appellate counsel was ineffective. Below, appellate counsel testified that the claim was not adequately preserved for appeal and Taukitoku conceded that raising the claim would have been "fairly futile." On appeal, Taukitoku simply points to comments sections of news articles about the case and concludes that a change of venue was warranted. He does not establish that this claim would have been successful on appeal from his judgment of conviction. *See Sonner v. State*, 112 Nev. 1328, 1336, 930 P.2d 707, 712 (explaining the standard for reviewing a denial of a motion for change of venue). Accordingly, we conclude that the district court did not err by denying this claim.

ECF No. 77-24 at 4-5.

### ii. Legal Standard

To prevail on his ineffective assistance of appellate counsel claim, Petitioner must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, Petitioner "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id*.

To show a constitutional violation as a result of a denial of a motion for change of venue, a habeas petitioner must show that "presumed" or "actual prejudice" resulted. *See Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988). To establish "presumed prejudice," the petitioner

must show that "the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Id*. In addition, the petitioner must show there is a "reasonable likelihood" that the prejudicial news coverage "prevent[ed] a fair trial." *Casey v. Moore*, 386 F.3d 896, 906-07 (9th Cir. 2004). Courts rarely find "presumed prejudice" because the 'saturation' is 'reserved for an extreme situation.'" *Id*. To establish "actual prejudice," the petitioner must demonstrate that "the jurors demonstrated actual partiality or hostility that could not be laid aside." *Harris*, 885 F.2d at 1363. "[J]urors need not, however, be totally ignorant of the facts and issues involved." *Id*.

### iii.  Conclusion

The Nevada Supreme Court reasonably concluded that Taukitoku failed to demonstrate that appellate counsel's representation fell below an objective standard of competence and failed to demonstrate prejudice. Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit. Appellate counsel testified at the post-conviction evidentiary hearing that "to have any success with [a motion for change of venue], you have to go farther in the process than took place in this case. You have to actually run into perceived difficulties with seating an impartial jury, with pretrial publicity and all of that kind of stuff…" ECF No. 77-1 at 56. He further testified that he had the "philosophy that I'd rather not just throw everything I got up against the wall and see if something sticks. I haven't much success with that. So I try to pick a horse and ride it." *See generally Knowles v. Mirzayance*, 556 U.S. 111 (2009) (the law does not require counsel to raise every available non-frivolous defense).

Appellate counsel did not have a reasonable probability of success on appeal. Despite the nature of the comments related to news articles of the incident submitted in support of the motion for change of venue, Taukitoku does not show a constitutional violation arising from the denial of a motion for change of venue. Potential jurors were questioned and disclosed if they were aware of the case from the news and the trial court admonished jurors that they were expected to be fair and impartial. ECF No. 73-1 at 28-29. In addition, jurors that indicated potential bias were excused. *Id*. at 30-32. A jury instruction provided that jurors were only to consider the evidence

in the case and that "[a] verdict may never be influenced by sympathy, passion, prejudice, or public opinion." ECF No. 73-3 at 20. The state appellate court's denial of this claim of ineffective assistance of appellate counsel was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. Taukitoku is denied federal habeas relief for Ground 5.

### f. Ground 6—Ineffective Assistance re: Failure to Appeal Denial of Trial Continuance

In Ground 6, Taukitoku alleges appellate counsel rendered ineffective assistance for failure to challenge the trial court's denial of a continuance. ECF No. 50 at 28-32. He asserts that trial counsel requested a continuance based on the State's repeated late disclosures of evidence, including a report of a new witness. *Id*. at 29-30. Because the trial court denied trial counsel's request for a continuance, trial counsel was not adequately prepared for trial and did not have time to investigate the late disclosures of evidence. *Id*.

### i. State Court Determination

The Nevada Supreme Court held:

> Taukitoku contends that the district court erred by denying his claim that appellate counsel was ineffective for failing to challenge the district court's denial of his motion for continuance. Taukitoku fails to demonstrate that appellate counsel was ineffective. At the evidentiary hearing, appellate counsel testified that he did not believe this claim would be successful and therefore decided to focus on a stronger argument. *See Doleman*, 112 Nev. at 848. Taukitoku fails to demonstrate that counsel's decision was unreasonable. *See Ford v. State*, 105 Nev. 850, 853 (recognizing that appellate counsel will be most effective when every conceivable issue is not raised on appeal). Taukitoku also fails to explain how he would have benefitted from a continuance and does not establish that this claim would have had a reasonable probability of success on appeal. *See Higgs v. State*, 126 Nev. 1, 9 (2010) (explaining the standard for reviewing a denial of motion for a continuance). Accordingly, we conclude that the district court did not err by denying this claim.

ECF No. 77-24 at 5.

### ii. Conclusion

The Nevada Supreme Court's rejection of Ground 5 was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Appellate counsel was not ineffective for failure to raise an issue that lacks merit. The Court has determined that Taukitoku is not entitled to habeas corpus relief on his claim that the trial court erred by denying a continuance. As discussed above, the state court's denial of the motion for continuance was not arbitrary and did not violate due process. The state court did not abuse its broad discretion in denying the motion for continuance based on the information presented at the time of the request. In addition, at the post-conviction evidentiary hearing, appellate counsel testified that he did not challenge the denial of a continuance because "it never became part of the record that there was actual prejudice from this discovery dump." ECF No. 77-1 at 57. Taukitoku cannot demonstrate a reasonable probability that, but for his appellate counsel's deficiency, he would have prevailed on his appeal. Taukitoku is denied federal habeas relief for Ground 6.

### g. Ground 7—Ineffective Assistance re: Failure to Raise on Appeal that the Prosecutor Shifted the Burden of Proof

In Ground 7, Taukitoku alleges that appellate counsel rendered ineffective assistance for failure to raise on appeal that the State shifted the burden of proof to the defense during closing rebuttal argument. ECF No. 50 at 32- 35. He argues that the State made improper arguments and comments that the defense could not rely on deficiencies in the evidence from the State not calling witnesses. *Id.* at 34-35. Trial counsel objected to the State's comments, which the trial court overruled. *Id.* Taukitoku asserts that appellate counsel should have challenged the trial court's error in overruling the defense's objection. *Id.* at 35.

### i. Additional Background Information

During closing argument, the State commented on defense counsel's argument as follows:

> Now, at several portions during her argument, [defense counsel] said to you, well, we didn't hear from this witness and we didn't hear from that witness. We didn't hear from the detectives … And so [defense counsel] said three or four times where are the detectives? Where is this person or where is that person? I would suggest to you, ladies and gentlemen, that's improper argument. Each side has had discovery in the case, all the police reports, all the photographs, . . .

ECF No. 40-7 at 83.

The defense objected and the trial court overruled her objection to allow the State to finish. *Id.* The State continued as follows:

> Responding to the point that [defense counsel] raised and it invites the following response, each side in this case had all the police reports, all of the tapes, all of the evidence, all of the photographs for many, many months. And each side is free to call whatever witnesses they choose to or whatever witnesses or to present whatever evidence they choose. You as the jury have to base your decision on the evidence that was presented, not as she suggests the evidence that was not presented.

> And when you think about that, go back to instruction number ten, neither the prosecution nor the defense is required to call as witnesses all persons who may appear to have some knowledge of the matters in question in this trial.

> So the lawyers make their strategic decisions and they present what they present and you should base your decision on what is presented, not on speculation about what was not presented.

*Id.* at 83-84.

### ii.  State Court Determination

The Nevada Supreme Court held:

> Taukitoku contends that the district court erred by denying his claim that appellate counsel was ineffective for failing to argue on appeal that the prosecutor inappropriately shifted the burden of proof during rebuttal argument. Taukitoku fails to demonstrate that counsel was ineffective. In context, the prosecutor's argument that each side had the ability to call witnesses and present evidence constituted a fair response to Taukitoku's argument that the State was "hiding" something by failing to call the lead detectives. *See Miller v. State*, 121 Nev. 92, 99 (2005) (a prosecutor's statements must be considered in context); *see generally Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 706 (2009) (discussing inappropriate inferences from the State's failure to present evidence). Even assuming that the statement was inappropriate, no relief would have been warranted because Taukitoku does not allege the jury was improperly instructed regarding the State's burden of proof and the evidence against him was overwhelming. We conclude that the district court did not err by denying this claim.

ECF No. 77-24 at 4-5.

### iii.  Conclusion

The Nevada Supreme Court's rejection of Ground 7 was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

The Nevada Supreme Court reasonably determined that Taukitoku failed to demonstrate that appellate counsel was deficient for failing to raise this claim on appeal. The failure to present a weak issue on appeal does not fall below an objective standard of competence and Taukitoku does not demonstrate prejudice. Examining the State's comments in the context in which they were made, the comments can be characterized as fair comments on the evidence and in response to defense counsel's argument. As stated by the Nevada Supreme Court, the jury was not improperly instructed regarding the State's burden of proof. Further, during closing argument, the State provided that it must prove the case beyond a reasonable doubt and that "[t]he defendant has absolutely no burden of proof whatsoever." ECF No. 40-7 at 26. *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir. 1996) ("The arguments of counsel are generally accorded less weight by the jury than the court's instructions and must be judged in the context of the entire argument and the instructions.") In addition, the evidence against Taukitoku was more than enough to establish his guilt. Taukitoku is denied federal habeas relief for Ground 7.

### h.  Ground 8—Cumulative Error

In Ground 8, Taukitoku alleges that the cumulative effect of trial errors violated his Fifth, Sixth, and Fourteenth Amendment due process, equal protection, and fair trial rights. ECF No. 50 at 35-37. In response to Taukitoku's contention that "the district court erred by denying his claim of cumulative error, the Nevada Supreme Court provided that, "[h]aving found no errors, there is nothing to cumulate." ECF No. 77-24 at 6. Taukitoku has not shown that the Nevada Supreme Court's rejection of Ground 8 was contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court.

Because the Court has not found that Taukitoku demonstrated any errors, there are not multiple errors to cumulate. Accordingly, the Court therefore denies relief as to Ground 8.

### IV.    Certificate of Appealability

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a

COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V.      Conclusion

It is therefore ordered that Petitioner Samisomi Taukitoku's second amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 50) is denied.

It is further ordered that a certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute John Henley for Respondent Filson, enter judgment accordingly, and close this case.

DATED: October 10, 2024

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE